UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LUCAS BETANCOURT                    :
                                    :
v.                                  :    CIV. NO. 3:05CV1906 (HBF)
                                    :
MICHAEL SLAVIN,                     :
EDWARD APICELLA,                    :
STANLEY STASAITIS, and              :
WILLIAM HOWARD JONES                :
                                    :

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Lucas Betancourt, brings this civil rights action pursuant to 42 U.S.C. §1983, alleging that Sergeant Michael Slavin, Lieutenant Edward Apicella, Officer Stanley Stasitis and Detective William Howard Jones deprived him of constitutional rights secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.[1]  Plaintiff also alleges violations of state law as pendant claims to this action.[2]

Pending is defendants' Motion for Partial Summary Judgment

---

[1]Plaintiff alleges his civil rights were violated as follows: excessive force in violation of the Fourth and Fourteenth Amendments (Count One), interference with plaintiff's right to counsel in violation of the Sixth Amendment (Count Two), wrongful custodial interrogation in violation of the Fifth and Fourteenth Amendments (Count Three) and deliberate indifference to medical needs in violation of the Eighth and Fourteenth Amendments (Count Four).

[2]Plaintiff alleges state law claims of Common Law Assault (Count Five), Common Law Battery (Count Six), Intentional Infliction of Emotional Distress (Count Seven), and Negligence (Count Eight).

on fourteen grounds.[3]

Plaintiff consents to the entry of judgment on the following claims: (1) any claim regarding plaintiff's rights to be free from seizure, arrest and imprisonment without probable cause (as to all defendants); (2) Count Two, interference with plaintiff's right to counsel in violation of the Sixth Amendment (as to all defendants); (3) Count Three, wrongful custodial interrogation in violation of the Fifth and Fourteenth Amendment (as to all defendants); (4) Count Four, deliberate indifference to need for medical treatment in violation of the Eighth Amendment[4] (as to all defendants); and (5) Counts Five and Six, common law assault and battery (as to defendants Stasaitis and Jones only). [Doc. #61 at 1].

For the reasons that follow, defendants' Motion for Partial Summary Judgment **[Doc. #57]** is **GRANTED** in part and **DENIED** in part.

STANDARD OF LAW

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  See  D'Amico v. City of New York, 132 F.3d 145, 149 (2d

_____

[3]The motion does not address the use of excessive force and assault and battery claims against defendants Edward Apicella and Michael Slavin.

[4]The due process clause of the Fourteenth Amendment applies to pretrial detainee's claim of deliberate indifference to medical needs.  City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983).

Cir. 1998);  see also  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, (1986).  The non-moving party may not rely on conclusory allegations or unsubstantiated speculation.  See D'Amico, 132 F.3d at 149.  Instead, the non-moving party must produce specific, particularized facts indicating that a genuine factual issue exists. See  Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998).  To defeat summary judgment, "there must be evidence on which the jury could reasonably find for the [non-movant]."  Anderson, 477 U.S. at 252.  If the evidence produced by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted.  See id. at 249-50.

Pursuant to D. Conn. L. Civ. R. 56(a)(3),

> Each statement of material fact in a Local Rule 56(a)1 Statement by a movant or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. The affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served with the Local Rule 56(a)1 and 2 Statements in conformity with Fed. R. Civ. P. 56(e). Counsel and pro se parties are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including, when the movant fails to comply, an order denying the motion for summary judgment, and, when the opponent fails to comply, an order granting the motion.

A party may not create a genuine issue of material fact by

3

presenting contradictory or unsupported statements.   See
Securities & Exchange Comm'n v. Research Automation Corp., 585
F.2d 31, 33 (2d Cir. 1978).  Nor may he rest on the "mere
allegations or denials" contained in his pleadings.  Goenaga v.
March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.
1995).  See also Ying Jing Gan v. City of New York, 996 F.2d 522,
532 (2d Cir. 1993) (holding that party may not rely on conclusory
statements or an argument that the affidavits in support of the
motion for summary judgment are not credible).  A self-serving
affidavit which reiterates the conclusory allegations of the
complaint in affidavit form is insufficient to preclude summary
judgment.  See Lujan v. National Wildlife Fed'n, 497 U.S. 871,
888 (1990).  "The nonmovant, plaintiff, must do more than present
evidence that is merely colorable, conclusory, or speculative and
must present concrete evidence from which a reasonable juror
could return a verdict in her favor." Page v. Connecticut
Department of Public Safety, 185 F. Supp. 2d 149, 152 (D. Conn.
2002) (citations and internal quotation marks omitted).

    If a nonmoving party has failed to make a sufficient showing
on an essential element of his case with respect to which he has
the burden of proof at trial, then summary judgment is
appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23
(1986).  If the plaintiff fails to provide any proof of a
necessary element of the plaintiff's case, then there can be no
genuine issue as to any material fact.  Id.  A complete failure
to provide proof of an essential element renders all other facts

immaterial.  <u>Id.</u>  <u>see also</u> <u>Goenaga v. March of Dimes Birth</u>
<u>Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden is
satisfied if it can point to an absence of evidence to support an
essential element of nonmoving party's claim).

<u>FACTS</u>

 Based on defendants' Local 56(a)(1) Statement and exhibits
[doc. #57-2], the following facts are undisputed.[5]

1. On January 29 and 30, 2005, Sergeant Edward Apicella,
  Detective Michael Slavin, Detective William Howard Jones and
  Officer Stanley Stasaitis were active members of the
  Waterbury Police Department. [Def. Local 56(a)(1) Stat. ¶1].

2. On January 29, 2005, the Waterbury Police Department
  received a report of a home invasion at 63 Glenview Avenue.
  <u>Id.</u> at ¶2.

3. Mario Fusco, the victim of the home invasion, reported that
  three male parties knocked on his door and, when he opened
  the door, these males forced their way inside the home. <u>Id.</u>
  at ¶3.

4. Mr. Fusco was knocked to the floor of his home, and then his
  arms and legs were duct taped and a pillow case was placed
  over his head and taped around his neck.  <u>Id.</u> at ¶4.

5. Mr. Fusco's residence was robbed and he was left on the
  floor in the taped condition when the perpetrators left his

---

[5]Plaintiff admits all of the facts set forth in defendants'
Local 56(a)(1) Statement. [Doc. #61 at 2].

home.  Id. at ¶5.

6.  On January 29, 2005, a statement was taken from Mario Fusco at the Waterbury Police Department by Detective William Howard Jones. Mr. Fusco provided details of the crime. Id. at ¶6.

7.  Based upon the information provided by the victim, Mario Fusco, the defendant officers identified an individual by the name of Michael Metevier to be a person of interest in the home invasion investigation. Id. at ¶7.

8.  The defendants, Sergeant Apicella and Detective Slavin, located Michael Metevier on January 29, 2005, and Mr. Metevier provided them with a statement. Id. at ¶8.

9.  In the statement, Mr Metevier identified the perpetrators of the home invasion of Mr. Fusco's residence to be himself, Lucas Betancourt, and Lucas' two nephews, Ricky and Fi. Id. at ¶9.

10.  A Search and Seizure Warrant for the person of Lucas Betancourt and his apartment at 59-2 Ridge Street in Naugatuck, Connecticut, was issued by a Judge of the Superior Court on January 30, 2005 at 4:20 a.m. Id. at ¶10.

11.  After gaining entry into the apartment at 59-2 Ridge Street to execute the Search and Seizure Warrant, the defendant officers located the following occupants inside the residence: Felipe Buitrago, Rico Torres, Eldon Mauro, Alain Fauteux and Alia Betancourt. Lucas Betancourt was not present inside the residence at this time.  Id. at ¶11.

12.  During the execution of the Search and Seizure Warrant, one
     of the occupants of the dwelling, Rico Torres, identified
     himself as one of the perpetrators of the home invasion and
     told the defendants that Lucas Betancourt initiated,
     participated in and directed the home invasion of Mario
     Fusco's residence.  Id. at ¶12.

13.  During the execution of the Search and Seizure Warrant, the
     defendant Slavin located a [silver .32 caliber] gun in Mr.
     Betancourt's dwelling that was similar in kind to a gun
     belonging to Mario Fusco and stolen from him in the home
     invasion. Id. at ¶13.

14.  During the execution of the Search and Seizure Warrant, Rico
     Torres, one of the perpetrators of the home invasion, told
     the defendant officers that the gun located in Mr.
     Betancourt's dwelling was the gun stolen from Mr. Fusco. Id.
     at ¶14.

15.  Rico Torres provided a written statement to the defendant
     Detective Michael Slavin, in which he detailed the
     involvement of Lucas Betancourt in the home invasion. Id. at
     ¶15.

16.  On January 30, 2005, Felipe Buitrago, another of the
     perpetrators of the home invasion, provided a statement to
     the Waterbury Police detailing the involvement of Lucas
     Betancourt. Id. at ¶16.

17.  During the execution of the Search and Seizure Warrant,
     Lucas Betancourt arrived at the residence and was placed

under arrest and transported to the Waterbury Police
Department.  <u>Id.</u> at ¶17.

18. While in custody at the Waterbury Police Department, the
plaintiff Lucas Betancout did not give any written statement
to anyone. <u>Id.</u> at ¶18.

19. According to Mr. Betancourt's own testimony, while he was in
custody at the Waterbury Police Department, he denied any
knowledge of the home invasion and he denied any involvement
pertaining to the home invasion.  <u>Id.</u> at ¶19.

20. With regard to the home invasion of Mario Fusco's residence,
Lucas Betancourt was convicted of the following crimes and
sentenced accordingly: Kidnaping First Degree, 15 years
jail; Kidnaping First Degree With a Firearm, 15 years jail
concurrent; Burglary First Degree, 5 years jail consecutive;
a second charge of Burglary First Degree, 5 years jail
concurrent; Robbery Second Degree, 5 years jail consecutive;
a second charge of Robbery Second Degree, 5 years jail
concurrent. <u>Id.</u> at ¶20.


<u>DISCUSSION</u>

<u>Count One: Excessive Force</u>

Plaintiff alleges that all four defendants violated his
Fourth Amendment rights by employing excessive and unreasonable
force against him during the course of his arrest and while he
remained in custody.  Defendants Edward Apicella and Michael
Slavin are not seeking summary judgment on the excessive force

claim, but Stanley Stasaitis and William Howard Jones are.

In order to determine whether a police officer used excessive force, the finder of fact must consider whether the force was reasonable in light of the circumstances and facts confronting the officer at the time of the incident. In doing so, its assessment may include the following factors: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the officer or others; and 3) whether the suspect was resisting arrest or attempting flight to evade arrest. Graham v. Connor, 490 U.S. 386, 396 (1988). These factors must be considered from the vantage point of the particular circumstances of the incident in question, and are not to be considered in light of the officers' underlying intent or motive. Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006). Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. The reasonableness of the force used should be assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396.

It is well settled that a police officer "has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988) (citations

omitted). An officer is liable for failure to intercede where the officer "observes that excessive force is being used or has reason to know that it will be used." Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) (citation omitted). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citing O'Neill, 839 F.2d at 11-12. "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." Id.

In opposing the motion for summary judgment, plaintiff alleges  that defendants Stasaitis and Jones failed to intervene when other defendants were using excessive force against him. [Betancourt Aff. ¶¶7-8, 10-11, 12-21, 25, 28-30, 32-33]. On this record, there are disputed issues of material fact as to whether any of the defendants used force, the degree of force used, the necessity for force, whether any force was excessive, and whether any defendant failed to intervene, having a realistic opportunity to do so. All defendants deny using any force.[6] [Pl. Ex. A-D].

The question of whether the officers' actions were objectively so unreasonable as to constitute excessive force is a

---

[6]Plaintiff states that "defendants' position is not that their use of force was reasonable under the circumstances-rather, their position is that force was not used against Mr. Bentancourt, period." [Doc. #66-7 at 3 (emphasis in original)].

question for the jury. <u>Universal Calvary Church v. City of New</u>
<u>York</u>, No.96CIV.4606(RPP), 2000 WL 1538019, *4 (S.D.N.Y. Oct. 17,
2000). <u>See</u> also <u>Breen v. Garrison</u>, 169 F.3d 152, 153 (2d Cir.
1999) ("The issue of excessive force also was for the jury, whose
unique task it was to determine the amount of force used, the
injuries suffered and the objective reasonableness of the
officer's conduct.").

On this record, summary judgment is **DENIED** on the Count One
claim of excessive force as to defendants Stasaitis and Jones.

<u>Count Four: Denial of Medical Treatment</u>

In Count Four, plaintiff alleges that defendants Apicella,
Slavin, Stasaitis and Jones are liable for denying him medical
treatment. [Amend. Compl. Count Four ¶70]. "[T]he official
custodian of a pretrial detainee may be found liable for
violating the detainee's due process rights if the official
denied treatment needed to remedy a serious medical condition and
did so because of deliberate indifference to that need. <u>See</u>
<u>Weyant v. Okst</u>, 101 F.3d 845, 856 (2d Cir. 1996) (citation
omitted). Plaintiff "must first show that his medical condition
is objectively a serious one." <u>Brock</u>, 315 F.3d at 162 (citing
<u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>Chance v. Armstrong</u>,
143 F.3d 698, 702 (2d Cir. 1998)). Then, Betancourt must show,
for each defendant, that the defendant acted with deliberate
indifference to his medical needs. <u>Id.</u> (citing Estelle, 429 U.S.
at 104; <u>Chance</u>, 143 F.3d at 702).

<u>The objective test</u>

11

On this record, the Court finds that all the defendants are entitled to summary judgment on the ground that Bentancourt's medical needs were insufficiently serious to meet the Estelle test.

"There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition. In many cases, however, we have set forth factors that should guide the analysis." Id. The Second Circuit has identified "a non-exhaustive list of such factors, including: (1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" Id. (quoting Chance, 143 F.3d at 702).

Betancourt alleges that as a result of the assault and battery, he was "bleeding profusely from his nose and mouth," (Pl. Aff. ¶¶20, 30); defendant "Apicella drove his elbow into Mr. Betancourt's face, causing one of his teeth to crack," (Id. ¶20); his "injuries prevented him from being able to turn his neck to the left or the right while his mug shot was being taken," (Id. ¶36); "he was unable to eat for the two day period he was incarcerated in the lock-up," (Id. ¶31); and in March 2005, he was treated at the MacDougal Walker Correctional facility for a cracked tooth. [Pl. Ex. 4]. Plaintiff also alleges that his requests for medical treatment were ignored by defendants. Pl. Local 56(a)(2) Stat. ¶¶22, 24, 26, 29.

Plaintiff was initially held in the Waterbury Police Station lock-up.[7] Id. ¶30. After plaintiff's arraignment, he was transported to the New Haven Correctional facility, where he received medical attention on January 31 and February 1, 2005. [Pl. Ex. 2, 3]. The clinical record dated January 31, 2005, titled "intake screening," records that plaintiff "states while being arrested Waterbury PD Officer Slavin repeated [sic] stepped on l[eft] foot and punched him in l[eft] eye and repeatedly kicked in ribs [without] difficulty with eyesight or breathing." [Pl. Ex. 2]. The clinical record dated February 1, 2009, noted an "ecchymosis of the l[eft] orbit, no diplopia, dry abrasion l[eft] forearm, alert, walks and stands well, lungs clear, contusions and abrasion."[8] [Pl. Ex. 3].  In March 2005, plaintiff was treated at the dental clinic at MacDougal Walker Correctional facility. The record states, "[s]ays tooth cracked and now is sharp to tongue. Can't eat. Advised to eat on the other side and scheduled with Dr. Young to eval. trt." [Pl. Ex. 4].

Defendants argue that plaintiff cannot meet his burden to show that he suffered from an objectively serious medical condition.  The Court agrees. Viewing the facts in the light most favorable to plaintiff, he has not presented evidence that he

---

[7]Mr. Betancourt was arrested on Sunday, January 30, 2005 at approximately 4:00 a.m.; an Intake Screening was performed at the New Haven Correctional facility on Monday, January 31, 2005 and again on Tuesday, February 1, 2005. [Pl. Ex. 3].

[8]Ecchymosis is the medical term for a subcutaneous hematoma larger than 1 centimeter, commonly called a bruise.  Diplopia, commonly known as double vision, is the simultaneous perception of two images of a single object.

required specific medical treatment prior to January 31, or that his medical condition "significantly" affected his daily activities, or that he was in "chronic and substantial pain." Chance, 143 F.3d at 702 (citation and quotation marks omitted). The Court has carefully scrutinized the medical records and finds they do not support a finding that plaintiff suffered from an objectively serious medical condition before January 31. The medical records from New Haven Correctional Center dated January 31 and February 1 contain no references to a cracked tooth or pain.  Significantly, plaintiff received no treatment for any bleeding, bruising, abrasion or pain. The first contemporaneous medical record mentioning plaintiff's tooth was made in March 2005, after he had been in custody at least a month, and stated "[s]ays tooth cracked and now is sharp to tongue. Can't eat. Advised to eat on the other side and scheduled with Dr. Young to eval. trt." [Pl. Ex. 4].  A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form, unsupported by any contemporaneous records, is insufficient to preclude summary judgment.  See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).

Accordingly, summary judgment is **GRANTED** in favor of defendants on plaintiff's Count Four claim that they denied him treatment in violation of the Fourteenth Amendment.

Counts Five and Six: Assault and Battery

Plaintiff claims that defendants Apicella and Slavin subjected him to assault and battery while effectuating his

14

arrest, and the others failed to intercede to stop the "brutal
and unnecessary beating," causing him apprehension and fear. To
prevail on a claim for assault and battery, plaintiff must
establish that a defendant applied force or violence to him and
that the application of such force or violence was unlawful.
Williams v. Lopes, 64 F. Supp. 2d 37, 47 (D. Conn. 1999). See
Conn. Gen. Stat. §53a-59 (assault in the first degree); Conn.
Gen. Stat. §53a-22 (use of physical force in making arrest or
preventing escape).

Because the Court has found that a genuine issue of material
fact exists as to plaintiff's claim of excessive force, it
necessarily follows that questions arise as to the reasonableness
of defendants' use of physical force pursuant to state law.[9]  See
Miller v. Lovett, 879 F.2d 1066, 1073 (2d Cir. 1989), partially
abrogated on other grounds, Graham, 490 U.S. at 386. In Miller,
the Second Circuit court held that the claim of assault and
battery is "so tightly interwoven" with the federal claim of
excessive force that the district court erred when it refused to
exercise its pendent jurisdiction over the claim of assault and
battery. Miller, 879 F.2d at 1073.

_____

[9]Conn. Gen. Stat. §53a-22(b) provides in relevant part: "a
peace officer . . . is justified in using physical force upon
another person when and to the extent that he reasonably believes
such to be necessary to: (1) effect an arrest or prevent the
escape from custody of a person whom he reasonably believes to
have committed an offense . . .; or (2) defend himself or a third
person from the use or imminent use of physical force while
effecting or attempting to effect an arrest or while preventing
or attempting to prevent an escape."

For the same reasons the Court denied summary judgment on plaintiff's claim of excessive force, it will deny summary judgment as to his claims of assault and battery.

Accordingly, summary judgment is **DENIED** plaintiff's assault and battery claims as to defendants Apicella and Slavin on Counts Five and Six .

Count Seven: Intentional Infliction of Emotional Distress

All defendants move for summary judgment on plaintiff's claim of intentional infliction of emotional distress. To prevail on his claim of intentional infliction of emotional distress, plaintiff must establish (1) that defendants intended to inflict emotional distress or knew or should have known that their conduct would likely result in emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct in question was the cause of plaintiff's distress; and (4) that the emotional distress experienced by plaintiff was severe. Appleton v. Board of Education of Town of Southington, 254 Conn. 205, 210 (2000) (citations omitted).

"Courts have held that the use of excessive force can establish a claim for intentional infliction of emotional distress." Frappier, 2008 WL 4980362, *3  (quoting Clark v. Dowty, No. 3:05-CV-1345(WWE), 2007 WL 2022045, *14 (D. Conn. July 9, 2007). Because summary judgment was denied on plaintiff's excessive force claim, the Court cannot grant summary judgment on the intentional infliction of emotional distress claim.

Accordingly, summary judgment is **DENIED** on plaintiff's Count

16

Seven intentional infliction of emotional distress claim.

Count Eight: Negligence

Defendants move for summary judgment on Count Eight, arguing that "[p]laintiff may not prevail on a negligence claim when he has brought claims of intentional use of excessive force and intentional infliction of emotional distress." [Doc. 57-3 at 11]; see Frappier v. City of Waterbury, 3:07-CV-1457(WWE), 2008 WL 4980362 *3 (D. Conn. Nov. 20, 2008) (citing Naccarato v. Scarselli, 124 F. Supp. 2d 36, 45 (N.D.N.Y. 2000) ("When a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie."); see also Mazurkiewicz v. New York City Transit Authority, 810 F. Supp. 563, 570-71 (S.D.N.Y. 1993) (holding that plaintiff cannot argue intentional conduct based on a section 1983 excessive force claim and also argue that defendants were acting negligently; "while such a tactic may be appropriate were this a criminal action and plaintiff the defendant, it has no place in a civil action such as the instant lawsuit").  "Because plaintiff has alleged facts supporting excessive force,  [intentional infliction of emotional distress] and assault and battery claims, he may not also base a claim of negligence on the same conduct." Vilkuhu v. City of New York, No.06-CV2095(CPS)(JO), 2008 WL 1991099, *9 (E.D.N.Y. May 5, 2008)

> Further, a municipal employee enjoys
> qualified immunity from tort liability based
> on unintentional conduct related to the
> performance of governmental or discretionary

17

acts. See Elliott v. City of Waterbury, 245
Conn. 385, 411 (1998). "The hallmark of a
discretionary act is that it requires the
exercise of judgment." Lombard v. Edward J.
Peters, Jr. P.C., 252 Conn. 623, 628 (2000).
The manner in which a police officer makes an
arrest, including when to use force, is a
discretionary act. See Gordon v. Bridgeport
Housing Authority, 208 Conn. 161, 180-181
(1988) (policing community and investigating
those who break the law is discretionary
function); see also Galindez v. Miller, 285
F. Supp. 2d 190, 195 (D. Conn. 2003)
(determination of what level of force to use
under the circumstances "appears to fit"
within framework of police discretion).

Frappier, 2008 WL 4980362 *3-4.

Here, there is a material issue of fact whether defendants
used force and if so, whether the force was excessive. Defendants
Apicella, Slavin, Jones and Stasaitis all denied using any force
and/or observing any use of force while plaintiff was in the
custody of the Waterbury police. [Pl. Ex. A-D].  This is not a
nuanced argument. On this record, the jury will need to determine
whether defendants used force and whether the intentional use of
any force was excessive.  "The manner in which a police officer
makes an arrest or otherwise intervenes to remove an individual
from a residence, including determining what level of force to
use under the circumstances, appears to fit within the framework
of the day to day discretion exercised by police officers."
Galindez v. Miller, 285 F. Supp. 2d 190, 195 (D. Conn. 2003)
(citations omitted).

Accordingly, summary judgment is **GRANTED** in favor of
defendants on plaintiff's Count Eight negligence claim.

18

CONCLUSION

For the reasons stated, defendants' Motion for Summary Judgement [**Doc. #57**] is **GRANTED**[10] on the following claims: Count Four, deliberate indifference to need for medical treatment in violation of the Fourteenth Amendment (as to all defendants); and Count Eight, negligence (as to all defendants); and **DENIED** as to Count One, plaintiff's claim of excessive force (as to Stasaitis and Jones), Count Five, assault (as to Apicella and Slavin), Count Six, battery (as to Apicella and Slavin) and Count Seven, intentional infliction of emotional distress (all defendants).

The motion is **GRANTED** on consent on the following claims: (1) any claim regarding plaintiff's rights to be free from seizure, arrest and imprisonment without probable cause (as to all defendants); (2) Count Two, interference with plaintiff's right to counsel in violation of the Sixth Amendment (as to all defendants); (3) Count Three, wrongful custodial interrogation in violation of the Fifth and Fourteenth Amendment (as to all defendants); (4) Count Four, deliberate indifference to need for medical treatment in violation of the Eighth Amendment (as to all defendants); and (5) Counts Five and Six, common law assault and battery (as to defendants Stasaitis and Jones only). [Doc. #61 at 1].

_____

[10]This is not a recommended ruling.  The parties consented to proceed before a United States Magistrate Judge [Doc. #37] on January 22, 2009, with appeal to the Court of Appeals.

19

The causes of action remaining for trial are:  Count One, plaintiff's claim of excessive force (all defendants), Count Five, assault (as to Apicella and Slavin), Count Six, battery (as to Apicella and Slavin) and Count Seven, intentional infliction of emotional distress (all defendants).

ENTERED at Bridgeport this 16th day of December 2009.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE